[Civ. No. 36864. First Dist., Div. One. Mar. 10, 1976.]

ERLA M. ARNDT, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
WESTERN ASBESTOS COMPANY et al., Respondents.

## COUNSEL

Rockwell, Fulkerson & Barry and Richard F. Barry for Petitioner.

Yale I. Jones as Amicus Curiae on behalf of Petitioner.

T. Groezinger, James J. Vonk, George S. Bjornsen, Glenn W. Groenewold and Richard A. Krimen for Respondents.

## OPINION

**ELKINGTON, J.**—We review an order of the Workers' Compensation Appeals Board[1] (hereafter "Board") dismissing petitioner Erla M.

---

[1]Except when citing, or quoting from, earlier authority we shall follow the direction of Labor Code section 3200 (enacted 1974) that the term "*workmen's* compensation" shall hereafter also be known as "*workers'* compensation." (Our italics.)

Arndt's application for death benefits following the death of her husband, John H. Arndt, from a claimed occupational disease.

In the proceedings before the Board petitioner established, or offered to establish, the following facts.

The deceased had been employed for many years until April 28, 1967, at an occupation in which he was exposed to minute asbestos components in the air. He then changed to a different type of employment at which he worked until August 11, 1970. On February 3, 1971, his death was brought about by a cancerous tumor of the lung called mesothelioma, a disease, at that time, of unknown etiology. Petitioner learned during April of 1973 that mesothelioma was an occupational disease of persons who in the course of their employment are exposed to asbestos dust or related substances in the air. Until then she had no knowledge or information that deceased's death, or the mesothelioma, was related to his employment. She filed her application for workers' compensation death benefits with the Workers' Compensation Appeals Board three months later, on July 5, 1973.

Mesothelioma is a rare disease, and only recently had "research scientists [begun] noting the frequency of this disease in asbestos workers." Tumor specialists were only in the "early Seventies" becoming "aware of the relationship between asbestos and mesothelioma." This knowledge was even then "far from common among most physicians, not the least because the disease itself was so rare." The deceased's attending physician "had no knowledge that Mr. Arndt's death was directly attributable to his occupational exposure to asbestos until early 1973, despite [the doctor's] exposure to current medical events as a practicing internist," and he opined that "neither Mr. or Mrs. Arndt [was] aware of the occupational nature of his illness."

For reasons which will hereafter appear, we emphasize the fact that petitioner's application for workers' compensation benefits was filed more than *one year* after the date of her husband's death, and more than *240 weeks* after he had last been exposed to the toxic asbestos substances.

The Board dismissed petitioner's application for the stated reasons that it was filed (1) more than one year after Mr. Arndt's death, and (2) more than 240 weeks after the date of his injury.

The ruling was purportedly based upon Labor Code section 5406 which, as here relevant, provides: "The period within which may be commenced proceedings for the collection of [workers' compensation death benefits] is one year from: (a) The date of death where death occurs within one year from date of injury; . . . [¶] *No such proceedings may be commenced more than one year after the date of death, nor more than 240 weeks from the date of injury.*"[2] (Italics added.)

It will be noted that section 5406's several statutes of limitations have two commencement points; one is the *"date of death"* and the other, the *"date of injury."* (Italics added.)

We first consider the validity of the Board's conclusion that the application was barred because it was filed more than 240 weeks after the "date of injury."

The Board had obviously considered the "date of injury" to be the last day of deceased's exposure (Apr. 28, 1967) to the disease-causing asbestos substances.

In *Marsh* v. *Industrial Acc. Com.* (1933) 217 Cal. 338 [18 P.2d 933, 86 A.L.R. 563], three workers had become disabled through illness and had terminated their employment. Thereafter two of them died as a result of their illness. At a time beyond the fixed periods of the appropriate statutes of limitations for workers' compensation, the survivor of them, and the dependents of those who were deceased, learned that the workers' illness was a disease of the lungs due to silica dust, called pneumoconiosis silicosis, or silicosis, which had been caused by the inhaling of such dust by the workers in the course of their employment. The surviving worker, and the dependents of the others, then promptly filed applications for workers' compensation benefits.

The applicable statutes of limitations of *Marsh* provided, as does the present Labor Code section 5406, that proceedings for workers' compen-

---

[2]The full text of Labor Code section 5406 follows: "The period within which may be commenced proceedings for the collection of the benefits provided by Article 4 of Chapter 2 of Part 2 of this division is one year from: (a) The date of death where death occurs within one year from date of injury; or (b) The date of last furnishing of any benefits under Chapter 2 of Part 2 of this division, where death occurs more than one year from the date of injury; or (c) The date of death, where death occurs more than one year after the date of injury and compensation benefits have been furnished. [¶] No such proceedings may be commenced more than one year after the date of death, nor more than 240 weeks from the date of injury."

sation death benefits were permitted only where the "death ensued within one year from the date of the injury," and where proceedings were commenced *"within one year from the date of death, and in any event within two hundred forty weeks from the date of the injury."*[3] (Italics added.)

The claim of the widow of one of the deceased workers, Marsh, was made within one year of his death, and within 240 weeks of his last exposure to silica dust. However, his death had not "ensued within one year from the date" of such last exposure.. At issue was the question whether that date was the statute's "date of injury." If it was, the claim was barred.

■ After exhaustively reviewing broad authority on the subject the *Marsh* court concluded (p. 351): " '[I]n the case of a latent and progressive disease, such as pneumoconiosis, it cannot reasonably be said that the injury dates necessarily from the last day of exposure to a dust-laden atmosphere and that the prescriptive period begins to run from that day. *Rather, according to our view, should the date of the injury be deemed the time when the accumulated effects culminate in a disability traceable to the latent disease as the primary cause, and by the exercise of reasonable care and diligence it is discoverable and apparent that a compensable injury was sustained in performance of the duties of the employment.*' " (Italics added.)

This rule was applied to the application of the widow of Marsh. It was held that if, upon remand, it should appear that the applicant neither knew, nor reasonably should have known, the cause of her husband's disability until after his death, the *date of such discovery,* for the purpose of the statute of limitations, should be fixed as the statute's "date of injury."

---

[3]The *Marsh* statutes of limitations are found in section 11 of the state's original "workmen's compensation, insurance and safety act of 1917." (See Stats. 1917, ch. 586, p. 841.) They are here set out in full:

"Proceedings for the collection of the·death benefit provided by subsection (c) of said section nine must be commenced within one year from the date of death, and in any event within two hundred forty weeks from the date of the injury, and can only be maintained when it appears that death ensued within one year from the date of the injury, or that the injury causing death also caused disability which continued to the date of the death and for which a disability payment was made, or an agreement for its payment made, or proceedings for its collection commenced within the time limited for the commencement of proceedings for the recovery of the disability payment."

This rule of *Marsh* has been uniformly followed throughout the years.[4] It disposes of the Board's conclusion, and the instant respondents' contention, that the date of Mr. Arndt's last exposure to the mesothelioma-causing substance was the "date of injury."

More difficulty is encountered in resolving the question whether petitioner's claim was barred, as found by the Board, by Labor Code section 5406 in that it was filed more than one year after the "date of death."

On this question also, *Marsh* v. *Industrial Acc. Com., supra,* 217 Cal. 338, has spoken.

As has been pointed out, the court in that case, as to the worker Marsh's widow, applied the rule that the date on which it became known, or reasonably should have, that the death was of industrial causation, was for the purpose of death benefits the "date of injury." The claim had been filed within one year of the "date of death," so there was no issue on that point.

However, in *Marsh* the claim of the widow of the other deceased worker, Woods, was filed more than one year after the "date of death." As to that application, and without further discussion, the court said (p. 352): "There is therefore no escape from the mandatory provisions of section 11 (b), subdivision (2), of said act and the action of the Commission in denying relief was clearly correct. The order in this case is affirmed."

Implicit in this ruling of *Marsh* is the holding that an application for compensation benefits following a worker's death from disease of industrial causation must, in any event, be filed within one year of the death. And this requirement was held to exist even though, as in the case before us, the dependent neither knew, nor reasonably should have

[4]See *Chambers* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 556, 559 [72 Cal.Rptr. 651, 446 P.2d 531]; *Fruehauf Corp.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 569, 572-575 [68 Cal.Rptr. 164, 440 P.2d 236]; *Pullman Co.* v. *Industrial Acc. Com.* (1946) 28 Cal.2d 379, 383-384 [170 P.2d 10]; *Alford* v. *Industrial Accident Com.* (1946) 28 Cal.2d 198, 203-204 [169 P.2d 641]; *Huysman* v. *Kirsch* (1936) 6 Cal.2d 302, 311-313 [57 P.2d 908]; *Warrington* v. *Charles Pfizer & Co.* (1969) 274 Cal.App.2d 564, 567 [80 Cal.Rptr. 130]; *Argonaut Mining Co.* v. *Ind. Acc. Com.* (1951) 104 Cal.App.2d 27, 30 [230 P.2d 637]; *Williams* v. *Industrial Acc. Com.* (1945) 71 Cal.App.2d 136, 138 [161 P.2d 979]; *Travelers Ins. Co.* v. *Indus. Acc. Com.* (1939) 32 Cal.App.2d 643, 646 [90 P.2d 327]; *Price* v. *Industrial Acc. Com.* (1935) 9 Cal.App.2d 213, 215 [49 P.2d 294]; *Giminez* v. *Industrial Acc. Com.* (1933) 132 Cal.App. 638, 639 [23 P.2d 425].

known, of the death's industrial causation until after the expiration of the one-year period.

Unlike the previously discussed ruling of *Marsh*, we find no appellate decisions of this state following, or even considering, the unelaborated ruling instantly under discussion. On the other hand, we observe that a recent decision of the same court casts considerable doubt upon the ruling's current validity. That case is *Fruehauf Corp.* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 569.

*Fruehauf* says (p. 577): "It would be unreasonable to hold that although an employee who has suffered an injury resulting from several minor traumas is deemed not to be injured for the purposes of the statute of limitations until the minor traumas result in disability, once the injury has ripened into disability he is required to know immediately that such disability was caused by his employment.[5] As *Marsh* and other authorities have held, an employee is not to be deprived of compensation merely because he fails to make a correct medical diagnosis. [Citations.]

"*Limitations provisions in the workmen's compensation law must be liberally construed in favor of the employee unless otherwise compelled by the language of the statute, and such enactments should not be interpreted in a manner which will result in a right being lost before it accrues.* [Citations.] *To hold that an employee who has suffered an injury due to a series of latent, insidious, minor traumas is to be denied compensation even though he neither knew nor in the exercise of reasonable diligence should have known that his disability was of industrial origin would do violence to these rules and the beneficent spirit underlying the enactment of the workmen's compensation law.* [Citations.]" (Italics added.)

*Fruehauf,* as the above quotation indicates, concerned a disabled *worker* (as distinguished from a deceased worker's *dependent*) who did not know, and who had no reasonable means of knowing, the industrial causation of his disability, until after the statute of limitations appeared to have run. But the court's significant comments—that the claimant "is not to be deprived of compensation merely because he fails to make a correct medical diagnosis"; that the statutes of limitations should "not be interpreted in a manner which will result in a right being lost before it

---

[5]The *Fruehauf* court "perceive[d] no supporting rationale to distinguish [the effect of the injury there at issue resulting from minor cumulative traumas] from injuries that occur as a result of continuous, latent exposure to harmful substances" (68 Cal.2d, p. 576), as in *Marsh* and the case here at bench.

accrues"; and to hold that "an employee . . . is to be denied compensation even though he neither knew nor in the exercise of reasonable diligence should have known that his disability was of industrial origin would do violence" etc.—are logically of equal application to similarly caused late claims of workers' dependents.

Our instant inquiry then, turns to whether *Fruehauf* requires a holding that the Board's second reason for rejecting Mrs. Arndt's application, i.e., that it was not filed within one year of the "date of death," is also invalid.

As pointed out, *Fruehauf* concerned a late compensation claim of a disabled worker. But no process of reason will permit a conclusion that the law does not have at least equal concern for a deceased worker's wife and children or other dependents who, through no fault of their own, learn too late of the industrial causation of their bereavement. And equally unacceptable to reason would be a conclusion that the law should, in a proper case, aid a deceased worker's dependents by the fiction of an "injury" occurring after death, while the same dependents must be held strictly to a timely filing within a year of the "date of death," the industrial causation of which they had no reasonable means of knowing.

It must be presumed in enacting Labor Code section 5406's "within . . . one year from . . . the date of death" provision, the Legislature intended a reasonable statutory purpose and not one which, in the language of *Fruehauf*, would result in a "right being lost" before it was reasonably known to have accrued. It is the duty of a court to interpret statutes so as to make them reasonable (*Regents of University of California* v. *Superior Court* (1970) 3 Cal.3d 529, 537 [91 Cal.Rptr. 57, 476 P.2d 457]); and where " 'two constructions are possible and interpretation becomes necessary, the court will follow the rule of finding that construction which leads to the more reasonable result' " (*Hidden Valley Municipal Water Dist.* v. *Calleguas Municipal Water Dist.* (1961) 197 Cal.App.2d 411, 419 [17 Cal.Rptr. 416]).

As has by now been made clear, both Labor Code section 5406, and the earlier statutes of limitations of *Marsh*, required filing of death benefit claims within "one year from . . . the date of death" and, within "240 weeks from the date of injury." A logical reason—for fixing the "date of injury" as the time (even though it be after the worker's death) when the dependent knew, or reasonably should have known, of the *injury's industrial causation*, but not applying the same rationale to the

time the dependent knew, or reasonably should have known, of the *death's industrial causation*—is most elusive.

Of aid to us is Labor Code section 3202, commanding that workers' compensation statutes "be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment." This statute is construed, not as narrowly applying only to "persons injured in the course of their employment," but rather to "claimants" generally (*State Employees' Retirement System* v. *Workmen's Comp. App. Bd.* (1968) 267 Cal.App.2d 611, 615 [73 Cal.Rptr. 172]), and in "favor of awarding compensation" (*Greydanus* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 490, 493 [47 Cal.Rptr. 384, 407 P.2d 296]). It covers "all aspects of workmen's compensation" (*Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15, 18 [50 Cal.Rptr. 76]), *including a deceased worker's dependent's application for death benefits* (*Munoz* v. *Workmen's Comp. Appeals Bd.* (1971) 19 Cal.App.3d 144, 149 [96 Cal.Rptr. 394]), *and the statutes of limitations of Labor Code section 5406, here at issue* (*Bianco* v. *Ind. Acc. Com.* (1944) 24 Cal.2d 584, 588-589 [150 P.2d 806]).

The principle—that the stated commencement date of the running of a statute of limitations may be inoperative in cases where the claimant neither knew, nor in the exercise of reasonable diligence would have known, that the act or omission of another was the cause of the claimant's injury or damage—is by no means alien to our law. It has been variously applied, as follows: *Urie* v. *Thompson* (1949) 337 U.S. 163, 170 [93 L.Ed. 1282, 1292, 69 S.Ct. 1018, 11 A.L.R.2d 252] (disability from insidious and creeping disease); *Alter* v. *Michael* (1966) 64 Cal.2d 480, 483 [50 Cal.Rptr. 553, 413 P.2d 153] (medical malpractice); *Huysman* v. *Kirsch, supra,* 6 Cal.2d 302, 306-313 (medical malpractice); *Walker* v. *Pacific Indemnity Co.* (1960) 183 Cal.App.2d 513, 516-519 [6 Cal.Rptr. 924] (negligence of insurance broker); *Twomey* v. *Mitchum, Jones & Templeton, Inc.* (1968) 262 Cal.App.2d 690, 723-729 [69 Cal.Rptr. 222] (negligence of stockbroker); *Moonie* v. *Lynch* (1967) 256 Cal.App.2d 361 [64 Cal.Rptr. 55] (negligent breach of oral contract by accountant, Code Civ. Proc., § 339, subd. 1). According to *Warrington* v. *Charles Pfizer & Co., supra,* 274 Cal.App.2d 564, 568, the strict commencement of the running of statutes of limitations has been judicially "relaxed for a variety of reasons, such as implicit or express representation; fraudulent concealment, fiduciary relationship, continuing tort, continuing duty, and progressive and accumulated injury, all of them excusing plaintiff's

unawareness of what caused his injuries and all applying the *rule of discovery.*" (Italics added.)

*Warrington* v. *Charles Pfizer & Co., supra,* 274 Cal.App.2d 564, concerned the strict language of Code of Civil Procedure section 340, subdivision 3, that an action for damages for personal injuries shall be commenced: "Within one year." Nevertheless the court applied the "rule of discovery" which it defined (pp. 569-570) as follows: "[W]hen personal injury is suffered without perceptible trauma and by silent and insidious impregnation as a consequence of the act or omission of another, who knows, or is charged with the responsibility of knowing that such act or omission may result in personal injury, and the injured person is unaware of the cause of his injury, and as a reasonably prudent and intelligent person could not, without specialized knowledge, have been made aware of such cause, *no action for tort resulting from such cause begins to accrue until the injured person knows or by the exercise of reasonable diligence should have discovered the cause of such injury.*" (Italics added.)

Each of the parties places some reliance on Labor Code section 5412, which recites: "The date of injury in cases of occupational diseases is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that said disability was caused by his present or prior employment." This section was enacted about 14 years after *Marsh* v. *Industrial Acc. Com., supra,* 217 Cal. 338. It appears to implement that case's well-supported rule that the "date of injury," from a worker's industrially caused disease, is the time that he or, upon his death, his dependents, first knew or reasonably should have known of its industrial causation. It has scant application to the issue presently before us, except perhaps that it appears to be a legislative recognition of the principle so well expounded by *Fruehauf Corp.* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 569, 577.

Nor is it alarming, as suggested by respondents, that the interpretation sought by petitioner will result in a mass of stale workers' compensation death claims. Such an interpretation would affect only what must be a relatively low incidence of workers' deaths from diseases, the occupational causation of which is not reasonably known to them during their lifetimes. And the law seems not to find unreasonable, or unacceptable, occasional long-delayed claims for disability finally resulting from a much earlier exposure to causatives of an industrial disease. (See

*Argonaut Mining Co.* v. *Ind. Acc. Com., supra,* 104 Cal.App.2d 27—20 years; *State Comp. Ins. Fund* v. *Industrial Accident Commission* (1937) 2 Cal.Comp. Cases 69—16 years.)

The case of *Ruiz* v. *Industrial Acc. Com.* (1955) 45 Cal.2d 409 [289 P.2d 229] extends no aid to respondents' contention. There the court found mandatory the requirement of Labor Code section 5406 that no proceeding for a death benefit may be commenced more than one year after "the date of death," or more than 240 weeks after "the date of injury." But the court had before it no contention, or issue, or evidence, that the industrial causation of the worker's death was not known, or in the exercise of reasonable diligence would not have been known, to the petitioner within those statutory periods. "It is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court." (*McDowell & Craig* v. *City of Santa Fe Springs* (1960) 54 Cal.2d 33, 38 [4 Cal.Rptr. 176, 351 P.2d 344].)

■ The foregoing considerations impel us to hold that Labor Code section 5406, subdivision (a), is to be construed as requiring that a dependent's compensation claim, arising out of a worker's death from an industrially caused disease, must be commenced within one year from the "date of death," or the date that the applicant knew, or in the exercise of reasonable diligence should have known, that the death was of industrial causation.

It follows that the Board also erred in ruling that claims such as petitioner's must necessarily be filed within one year of the worker's death.

The Board's dismissal of the instant proceedings appears to have been based upon conceded dates and time periods. It is not clear that a full factual inquiry was made concerning the issue of when petitioner knew, or reasonably should have known, of the industrial causation of her husband's death or, indeed, whether such death was of industrial causation. The case will be set at large for such further proceedings as the Board shall deem proper. We have, of course, not passed upon the admissibility, or weight, or credibility, of such evidence as may hereafter be offered by any of the parties. Nor have we here passed upon petitioner's entitlement to workers' compensation benefits accrued and unpaid during the lifetime of deceased (see Lab. Code, § 4700); that issue was not briefed by the parties and has not been considered by us.

The order of the Workers' Compensation Appeals Board dismissing the application of petitioner Erla M. Arndt for death benefits is annulled; the Board will take such further proceedings as are not inconsistent with what we have said.

Sims, Acting P. J., and Weinberger, J.,* concurred.

The petition of respondent State Compensation Insurance Fund for a hearing by the Supreme Court was denied May 6, 1976. Clark, J., was of the opinion that the petition should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.